2006 ND 72

DeAnn R. HOPFAUF; Richard K. Stewart; and Michael L. Wagner, Trustee of Bankruptcy Estate of Richard K. Stewart and DeAnn R. Hopfauf, Plaintiffs and Appellants

v.

Richard J. HIEB; Richard J. Hieb, DDS, P.C., Defendants

Caesar C. Butura; and Face and Jaw Surgeons, P.C., Defendants and Appellees.

No. 20050203.

Supreme Court of North Dakota.

April 6, 2006.

Arnold V. Fleck, Fleck Law Office, Bismarck, ND, for plaintiffs and appellants.

Michael T. Andrews (argued) and Harlan P. Weir (on brief), Vogel Law Firm, Bismarck, ND, for defendants and appellees.

CROTHERS, Justice.

[¶1] DeAnn R. Hopfauf ("Hopfauf") and Richard K. Stewart, husband and wife, and Michael L. Wagner, trustee of the bankruptcy estate of Richard K. Stewart and DeAnn R. Hopfauf, appeal from the district court's judgment dismissing the claims against Caesar C. Butura ("Butura") and Face and Jaw Surgeons, P.C. ("Face and Jaw"). We affirm the district court's judgment.

I

[¶2] On February 4, 2002, Hopfauf retained Dr. Richard J. Hieb, DDS,[1] ("Hieb") to treat a chipped tooth that was causing discomfort. X-rays were taken during

---

1. Hieb was a party to the district court action but is not a party on this appeal due to settlement.

Hieb's examination of Hopfauf, and Hopfauf pointed to and described the location of the tooth. Using the standardized dental numbering system, the chipped tooth was number one, the first adult wisdom tooth. Hieb found extensive decay in the tooth, requiring immediate treatment. Hieb suggested either a root canal and crown or extraction as possible courses of action and explained the cost associated with each procedure. Hieb placed a temporary filling in tooth number one to alleviate Hopfauf's discomfort until she decided on a specific procedure.

[¶ 3] Two days later, Hopfauf contacted Hieb's office for a referral for extraction of the tooth. An employee of Hieb, P.C., made an appointment for Hopfauf at Face and Jaw and completed a referral form. Hieb wrote on the form that Hopfauf was referred for extraction of tooth number two, thus misidentifying the chipped tooth.

[¶ 4] On March 7, 2002, Butura, an oral surgeon employed at Face and Jaw, briefly reviewed Hopfauf's x-rays, which revealed extensive decay in tooth number two-significantly more decay than in number one. Butura verified that Hopfauf was there for extraction of a decayed tooth and proceeded to sedate Hopfauf and extract tooth number two in accordance with the instructions on the referral form. Hopfauf claims Butura spent less than a minute examining her prior to sedating her for the extraction.

[¶ 5] A few days after the surgery, Hopfauf discovered it was not the chipped tooth, number one, that was removed, but the tooth in front of that tooth, number two. Butura insisted he had extracted the right tooth. Hieb initially claimed the proper tooth was extracted but later admitted incorrectly identifying the chipped tooth as number two.

## II

[¶ 6] Our standard of review for summary judgment is well-established:

> Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

*Heart River Partners v. Goetzfried,* 2005 ND 149, ¶ 8, 703 N.W.2d 330 (citations and quotations omitted). A ruling court must consider the substantive evidentiary standard of proof when ruling on a motion, considering whether the trier of fact would find the plaintiff's case was proven by the required quality and quantity of the evidence. *Id.* at ¶ 9.

[¶ 7] Hopfauf argues the district court erred in granting Butura and Face and Jaw's motion for summary judgment on three bases: Hopfauf was unable to complete discovery before the summary judgment motion was made; the required resolution of factual disputes rendered this action inappropriate for summary judgment; and the court's determination of duty was based on an improper application of the law to the facts of the case.

## A

[¶ 8] Hopfauf argues she was precluded from conducting proper discovery and the district court erred in refusing to grant a continuance to achieve that end. Rule 56(f), N.D.R.Civ.P., states:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A district court's denial of a request for additional time for discovery under N.D.R.Civ.P. 56(f) is not overturned on appeal absent an abuse of discretion. *Continental Cas. Co. v. Kinsey*, 513 N.W.2d 66, 69 (N.D.1994).

[¶ 9] Here, Hopfauf was able to, and indeed did, provide a response to the summary judgment motion and an affidavit to support her opposition. Although she listed some issues she sought to further investigate, these facts were not the subject matter of the summary judgment motion and would, thus, be irrelevant. The district court's refusal to grant additional time for discovery was not an abuse of discretion.

### B

[¶ 10] Hopfauf contends this action was inappropriate for disposition via summary judgment because it required resolution of factual disputes by a fact-finder. However, critical facts of this case were not disputed, and the district court accepted Hopfauf's interpretation of the few facts that otherwise might have been in dispute. Hopfauf failed to point to a single issue of material fact in dispute but has, rather, made sweeping allegations that resolution of the facts was required. Summary judgment was appropriate in this case, as we further discuss below.

### C

[¶ 11] Hopfauf argues Butura and Face and Jaw were negligent in failing to obtain her informed consent. While claims against Butura arguably should have been analyzed as a "medical battery," neither remaining party raised that issue for our review.[2] We therefore consider the case as presented, conclude the district court was correct in its result, and affirm.

[¶ 12] "A major element of any negligence action is the existence and extent of a duty owed the defendant by the plaintiff." *Winkjer v. Herr*, 277 N.W.2d 579, 587 (N.D.1979). Physicians generally owe a duty of reasonable disclosure of the options available to a patient for treatment and the known, material risks involved. *Id.* Here, the question of whether Hieb or Butura had the duty to disclose such information was the main issue disputed in the summary judgment proceedings.

[¶ 13] The district court granted summary judgment based on a synthesis of *Long v. Jaszczak*, 2004 ND 194, 688 N.W.2d 173, and *Koapke v. Herfendal*,

---

2. The "law of the case" doctrine and the scope of the parties' appeal define the parameters of our review. *Tom Beuchler Constr. v. Williston*, 413 N.W.2d 336, 339 (N.D.1987). We therefore do not consider whether, in North Dakota, there remains a distinction between a battery, which involves a total lack of consent for an act, and a claim involving the absence of informed consent. The differences between the two doctrines have become blurred in numerous jurisdictions, including our own. Some jurisdictions have aban- doned the distinction between informed consent and battery, or no-consent, claims altogether. Others have not, stating, "To argue that consent that is inadequately informed is no consent at all ... is to ignore the practical differences underlying the distinction between battery and negligent nondisclosure." *Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986). Given the presentation of this appeal, clarification of these concepts under our law is left for another day.

2003 ND 64, 660 N.W.2d 206. Both *Long* and *Koapke* involve informed consent, or more specifically, whether the obligation to obtain informed consent rests with the referring or performing physician in a referral situation.

[¶ 14] *Long* and *Koapke* deal with "the duty of a physician to disclose sufficient information to permit a patient to make an informed and intelligent decision on whether to submit to a proposed course of treatment or surgical procedure." *Koapke,* 2003 ND 64, ¶ 14, 660 N.W.2d 206. In *Long,* a patient died following an allergic reaction to an intravenous pyelogram ("IVP") test. 2004 ND 194, ¶ 2, 688 N.W.2d 173. Neither the physician that ordered nor the radiologist that supervised the IVP informed the patient of the risks associated with the procedure. *Id.* at ¶ 3. On appeal, this Court held the referring physician and not the radiologist had the duty to obtain the patient's informed consent, because the physician formally ordered the procedure for purposes of diagnosing the patient's condition. *Id.* at ¶ 15.

[¶ 15] In *Koapke,* a dentist referred a patient to an oral surgeon for full-mouth extraction in order to be fitted with dentures. 2003 ND 64, ¶ 7, 660 N.W.2d 206. The oral surgeon conducted a full examination of the patient and discussed treatment options before proceeding with the extraction. *Id.* at ¶ 8. Following the extraction it was determined the patient could not be fitted with dentures, a risk she was not told of by either the referring dentist or the oral surgeon. *Id.* This Court determined the referring dentist had no duty to obtain the patient's informed consent because he neither formally ordered nor participated in the extraction. *Id.* at ¶ 23.

[¶ 16] We agree with the district court's conclusion that, based on *Long* and *Koapke,* the duty of obtaining informed consent rested with Hieb and not Butura.

Hieb formally ordered the extraction after discussing treatment options with Hopfauf. He participated in the procedure by placing the temporary filling in the tooth. Butura simply followed the instructions set forth by Hieb. All of these facts viewed in a light most favorable to Hopfauf lead to the conclusion this situation is akin to that in *Long* rather than in *Koapke,* and the duty to obtain informed consent rested with Hieb alone.

[¶ 17] Furthermore, a duty to disclose "can arise only if the physician knew or should have known of the risks to be disclosed." *Winkjer,* 277 N.W.2d at 588. Hopfauf has failed to direct us to any evidence supporting a position that Butura either knew or should have known that Hieb had directed him to extract the wrong tooth. Even Hopfauf's own expert witness stated that Butura acted within the acceptable standard of care for oral surgeons in determining which tooth to extract. There are no issues of material fact in dispute that support Hopfauf's contention that Butura breached any duty owed to her.

[¶ 18] We affirm the judgment of the district court.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., DEBBIE GORDON KLEVIN, D.J., and JOHN CHARLES IRBY, D.J., concur.

[¶ 20] The Honorable JOHN CHARLES IRBY, D.J., the Honorable DEBBIE GORDON KLEVEN, D.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., KAPSNER, J., and MARING, J., disqualified.